N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-03135-PAB-GPG

LIFTED LIMITED, LLC, a Colorado limited liability company,

      Plaintiff,

v.

NOVELTY INC., an Indiana corporation, and
WAL-MART STORES, INC., a Delaware corporation,

      Defendants.

_____

## ORDER
_____

      This matter is before the Court for the construction of U.S. Design Patent No.

662,655 [Docket No. 85-1].  The Court held a hearing pursuant to *Markman v.*

*Westview Instruments, Inc.*, 517 U.S. 370 (1996), on June 27, 2018.  Docket No. 146.

## I. BACKGROUND

      Plaintiff Lifted Limited, LLC is the assignee of U.S. Design Patent No. 662,655

(the '655 Patent"), which covers the "ornamental design for a lighter holder and tool, as

shown and described" in the following seven figures:



Fig 1

Fig 2

Fig 3

Fig 4

Fig 5

Fig 6

Fig 7

Docket No. 85-1 at 1.  Plaintiff filed this lawsuit on December 20, 2016.  Docket No. 1.

The operative complaint, filed on November 20, 2017, alleges that the Midnight Smoker

Utility Tool sold by defendants Novelty Inc. ("Novelty") and Wal-Mart Stores, Inc.

("Walmart") infringes the '655 Patent.  Docket No. 67 at 7-12, ¶¶ 26-27, 40-41, 54-61.

The parties have filed a Joint Statement of Disputed Terms for Construction [Docket

No. 139] and briefs regarding claim construction.  Docket Nos. 85, 94, 96, 121, 132,

141.

## II.  LEGAL STANDARD

Trial courts have a duty to "conduct claim construction in design patent cases,

as in utility patent cases."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679

(Fed. Cir. 2008) (en banc) (citation omitted).  However, there is no requirement that the

trial court "provide a detailed verbal description of the claimed design," because design

patents "typically are claimed as shown in drawings."  *Id.* (citations omitted).  Design

patents are generally better represented by an illustration than by a verbal description;

accordingly, the "preferable course ordinarily will be for a district court not to attempt to

'construe' a design patent claim by providing a detailed verbal description of the

claimed design."  *Id.*

While the preferable course is not to provide a detailed verbal description, the

Federal Circuit has noted that it may be appropriate to describe "various features of the

claimed design as they relate to the accused design and the prior art" or to address

issues that bear on the scope of a claim, such as conventions in design patent drafting

or distinguishing between functional and non-functional elements of the design.  *Id.*

at 680.  Accordingly, the trial court may offer a verbal construction of a design patent

where such construction would help to clarify the ornamental aspects of the design without unnecessarily supplanting the visual impression created by the illustrations contained in the design patent.

## III. ANALYSIS

### A. Invalidity

Walmart devotes the majority of its claim construction brief to arguing that the '655 Patent is primarily functional and therefore invalid. *See* Docket No. 121 at 7-12. However, claim construction is generally "not the proper avenue to pursue invalidity issues, as the purpose of claim construction is to guide the fact-finder in determining issues that bear on the scope of the claim." *Skechers U.S.A., Inc. v. Eliya, Inc.*, 2017 WL 3449594, at *4 (C.D. Cal. Mar. 14, 2017); *see also WCM Indus., Inc. v. IPS Corp.*, 2015 WL 12862730, at *5 (W.D. Tenn. Jan. 7, 2015) (noting that "[c]laim construction . . . is a separate inquiry from the question of invalidity"); *Spotless Enters., Inc. v. A & E Prods. Grp. L.P.*, 294 F. Supp. 2d 322, 344-45 (E.D.N.Y. 2003) ("[T]he process of distinguishing the ornamental features is merely a form of claim construction and is distinct from the functionality analysis of invalidity. A design patent can be primarily ornamental, yet have swaths of features that are not infringed if copied."). The Court therefore declines to consider Walmart's invalidity argument for purposes of this claim construction order.

### B. Claim Construction

Defendants argue that the poker, tamper, lighter opening, and sloped top are functional features that should be excluded from the scope of the claimed design.

Docket No. 85 at 6-7; Docket No. 121 at 12.  Defendants propose the following

construction:

> The ornamental design for a lighter tool depicted in the below figures with
> the following characteristics:
>
> 1.    The following components, depicted in the '655 figures below, are
>       functional and should not be considered as part of the construed
>       claim: Poker, Tamper, Rotational Pin, Lighter Opening, Poker
>       Storage Slot, Sloped Top, and Poker Access Indentation . . . .;
>
> 2.    The exterior surfaces of the lighter tool are smooth, *i.e.*, without
>       any ornamental textures or embossing;
>
> 3.    The tool body having a curved bottom with a singular continuous
>       radius between the bottom of the tamper and the back of the lighter
>       tool body; and
>
> 4.    The back bottom portion of the lighter tool body having
>       substantially squared off Corner.

Docket No. 139 at 5-6; *see also* Docket No. 85 at 16 (proposing the following verbal

description: "A design depicted in the figures of the '655 Design Patent but excluding

the poker, tamper, and lighter opening and their subcomponents.  And, with sides of a

smooth surface, *i.e.*, without any embossing or patterns, and a smooth, continuously

curved bottom with single radius"); Docket No. 121 at 13 (requesting that "the Court

adopt Novelty's alternate proposed construction").  Plaintiff responds that a detailed

verbal construction would not be helpful in this case because design patents are best

represented in drawings.  Docket No. 94 at 1-2; Docket No. 139 at 3-4.  Plaintiff

contends that defendants' proposed construction improperly excises certain features of

the smoking tool without regard for their contribution to the overall look of the claimed

design.  Docket No. 94 at 2.  Plaintiff requests that the Court construe the design as:

"An ornamental design for a lighter holder and tool as shown in Figures 1-7."  Docket

No. 139 at 3.

"Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404-05 (Fed. Cir. 1997). A design is functional when its appearance is "dictated by the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993); *see also Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016). In determining whether this standard has been met, the Court considers:

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Sport Dimension, Inc.,* 820 F.3d at 1322 (quotation omitted). However, while it may be appropriate to note particular functional features of a design, it is improper to wholly exclude structural elements of a design patent claim simply because they have functional aspects. *Id.* Instead, the Court should consider the manner in which the functional features of the design patent "contribute to the overall ornamentation of the design." *Id.* at 1323.

Defendants argue that the poker, tamper, rotational pin, lighter opening, poker storage slot, sloped top, and poker access indentation are functional elements that should be excluded from the claim scope. *See* Docket No. 139 at 5, 10. As defendants point out, some of the factors listed above support a finding that these elements serve

functional purposes.  Plaintiff holds a utility patent (the '912 Patent) claiming a

"smoker's pipe tool" having "a sheath extending along a longitudinal axis," a "central

recess . . . extending along [the] longitudinal axis," a "protrusion" at the bottom section

of the sheath, an "elongated, foldable poker," and a "longitudinal slot . . . extending

along the longitudinal axis."  Docket No. 141-1 at 10.  In addition, plaintiff's advertising

touts an "all-inclusive smoking tool" with a "fold-in stainless steel poker," an "ergonomic

lighter sleeve," a "stainless steel tamper," the ability to "securely hold[ ] 5 feet of hemp

wick."  Docket No. 121-6.

However, in arguing that plaintiff's advertising and concomitant utility patent

applications demonstrate that the poker, tamper, lighter opening, and sloped top are

purely functional, defendants blur the distinction between the functionality of the

various components of the smoking tool and the functionality of the particular way

those components are designed.  *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796

F.3d 1312, 1328 (Fed. Cir. 2015) (stating that "the function of the article itself must not

be confused with functionality of the design of the article") (internal quotation marks

and brackets omitted); *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1563

(Fed. Cir. 1988) (noting distinction "between the functionality of an article or features

thereof and the functionality of the particular design of such article or features thereof

that perform a function"), *abrogated in part on other grounds by Egyptian Goddess,

Inc.*, 543 F.3d 665.  Regarding the poker, for example, Novelty argues that plaintiff

"sought utility patent protection . . . covering 'an elongated, foldable poker' that is

'insertable into the pipe bowl" and thus "made clear that [the poker] was expressly

added for functional considerations, not merely ornamental."  Docket No. 85 at 8; *see*

7

*also* Docket No. 121 at 9 (citing similar portions of the utility patent applications to argue that poker is purely functional).  Novelty draws a similar conclusion with respect to the poker access indentation, citing statements in the utility patent applications that the indentation was "provided to allow the user to pry up on the poker."  Docket No. 85 at 11 (internal quotation marks and brackets omitted); *see also* Docket No. 121 at 10 (arguing that the side access indentation is functional because it "was designed to allow a user to access the poker when stored in the slot").  But the fact that the poker and access indentation are designed to serve functional purposes does not mean that the particular design of each element is dictated solely by function.  *See Thom McAn Shoe Co.*, 988 F.2d at 1123 ("That elements of the '081 design, such as the delta wing or the side mesh, also provide support for the foot does not mean that the specific design of each element, and the combination of these elements into the patented design, is dictated by purely functional considerations.").

On the other hand, defendants correctly point to statements in the utility patent applications and the '912 Patent that address the functionality of particular design features.  For example, the '912 Patent claims "an elongated, foldable poker . . . having first and second end portions with the second end portion mounted to the sheath."  Docket No. 141-1 at 10.  Claim 2 further specifies that the poker must be "substantially the same" length as the longitudinal slot extending along the sheath.  *Id.*  Regarding the poker access indentation, the patent claims a "recess . . . in the second side [of the sheath] extending substantially along and across the longitudinal axis . . . and under the poker in the closed position."  *Id.*  The '912 Patent therefore imposes certain design constraints: the poker must be "elongated" and "foldable" and be attached to the lighter

8

sheath at one end, and the poker access indentation must "extend[ ] substantially along . . . the longitudinal axis" and "under the poker." *Id.*

However, these constraints do not dictate every aspect of the design claimed in the '655 Patent. *See Unique Functional Prods., Inc. v. Mastercraft Boat Co., Inc.*, 82 F. App'x 683, 690 (Fed. Cir. 2003) (unpublished) (agreeing that a "rectangular coupler having a width and a height not substantially greater than those of the trailer extension arm to which the coupler mounts is not purely functional, because one could, after all, make a differently shaped coupler that includes a rectangular opening to receive that extension arm"); *Richardson v. Stanley Works*, 610 F. Supp. 2d 1046, 1050-51 (D. Ariz. 2009) (noting that, because the "particular number and size of teeth" in the claimed design could "be altered without adversely affecting that function," the plaintiff's "choice in those respects [could] reasonably be said to be dictated by ornamental considerations"), *aff'd*, 597 F.3d 1288 (Fed. Cir. 2010).  Plaintiff argues that the following constitute ornamental aspects that "must be considered in evaluating the overall appearance of the claimed design," Docket No. 94 at 11: (1) the shape and alignment of the poker relative to other components, *id.*; (2) the overall shape and placement of the tamper, *id.* at 12; (3) the oval-shaped lighter opening, *id.*; (4) the slight slope of the lighter top, *id.*; and (5) the overall boot-shaped design of the lighter sheath. Docket No. 132 at 5.

Of the various components comprising the '655 Patent, the Court finds that only the central recess is dictated purely by function.  While plaintiff argues that "an opening can be designed in many ways that do not utilize an oval shape," Docket No. 94 at 12, the size and shape of the central recess are necessarily dictated by the dimensions of

a standard lighter.  *See* Docket No. 141-1 at 10 (claiming a "central recess . . . sized to

hold a smoking lighter"); *see* Best Lock Corp., 94 F.3d 1563, 1566 (Fed. Cir. 1996)

(holding that the design of a key blade was dictated solely by function because it had to

be designed as shown in the patent drawings "to fit into its corresponding lock's

keyway").  This is made evident by the fact that several of the alternative designs

offered by plaintiff appear to have central recesses with the same oval-shape and

dimensions.  *See* Docket No. 94-2 at 7-8; *see also Richardson*, 610 F. Supp. 2d at

1050 (noting that the "number of other patented designs that use[d] [the same]

configuration [as the claimed design] and the absence of alternative designs strongly

suggest[ed] that th[e] configuration [was] the best configuration and that it [was]

dictated by functional, not ornamental considerations").

    With regard to the other components of the '655 Patent – namely, the poker (and

its subcomponents), the tamper, the lighter top, and the lighter sheath – although each

of these components serves a functional purpose, they all contain aesthetic features

that contribute to the overall design of the smoking tool.  "When there are several ways

to achieve the function of an article of manufacture, the design of the article is more

likely to serve a primarily ornamental purpose."  *Thom McAn Shoe Co.*, 988 F.2d at

1123; *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1329-30 (stating that the court has often

focused "on the availability of alternative designs as an important – if not dispositive –

factor in evaluating the legal functionality of a claimed design").  Here, plaintiff has

presented evidence of smoking tools containing pokers and tampers of varying widths,

shapes, lengths, and alignments, *see, e.g.*, Docket No. 94-2 at 18 (Firlar 3 in 1 Wood

Stainless Steel Pipe Cleaner Tool with rounded tamper on top and tapered poker

extending from side), 26 (U.S. Patent No. 865,547 showing sword-like poker and golf-club-shaped tamper extending from central pivot point), 31 (U.S. Patent No. 2,536,852 showing triangular poker and elongated, tapered tamper attached to pivot point at base of tool), 50-53 (U.S. Patent No. 8,291,917 showing tapered poker/tamper extending down from lighter sheath); lighter sheaths having different shapes and degrees of solidity, *see, e.g.*, *id.* at 6 (U.S. Design Patent No. D729,442 showing lighter sleeve with open sides), 7 (Snub One Cigarette Snubber and Lighter Holder); and tops that "increase[] the distance from the flame . . . to the top segment" of the smoking tool without using the same slope as the '655 Patent.  Docket No. 85-3 at 196; *see, e.g.*, Docket No. 94-2 at 7 (LighterBro PRO), 9 (Hemplights Spooly Hemp Wick Dispensing Lighter Case).  Thus, excluding the tamper, lighter top, sheath, and poker from the claim scope does more than simply excise a purely functional feature of the '655 Patent.  *See Sport Dimension, Inc.*, 820 F.3d at 1323 (stating that the flotation device design "include[d] the shape of the armbands and side torso tapering, to the extent that they contribut[ed] to the overall ornamentation of the design"); *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1334 (noting that, "although the Design Patents [did] not protect the general design concept of an open trigger, torque knob, and activation button in a particular configuration, they nevertheless [had] some scope – the particular ornamental designs of those underlying elements"); *Richardson*, 610 F. Supp. 2d at 1050 (noting that the "proliferation of so many types of jaw or claw designs opposite the hammer-head suggest that ornamental considerations may play a larger role").  Notably, defendants have not provided any evidence that these alternative designs would "adversely affect the utility" of the smoking tool.  *See Sport Dimension, Inc.*, 820

F.3d at 1322 (internal quotation marks omitted).

Defendants challenge the significance of the alternative designs on three grounds. First, Novelty asserts that "none of the purported alternative designs cited by Plaintiff incorporate all of the functionality of the multi-tool's design" because each one omits a particular component of the design claimed in the '655 Patent. Docket No. 96 at 5. But this argument lacks merit in the context of claim construction, which focuses on the functionality of individual elements, not the functionality of the device as a whole. *See Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.*, 2013 WL 5941049, at *4 (C.D. Cal. Nov. 5, 2013) (rejecting argument, which "mistakenly assume[d] that it is the functionality of the device as a whole, rather than the functionality of the elements at issue, that matters for the construction of a design patent"); *see also Egyptian Goddess, Inc.*, 543 F.3d at 680 (stating that courts may use claim construction to "distinguish[] between those *features* of the claimed design that are ornamental and those that are purely functional" (emphasis added)); *OddzOn Prods., Inc.*, 122 F.3d at 1406 (noting that, although "functional characteristics do not invalidate the design patent," they may "limit the scope of the protected subject matter").

Second, Walmart argues that the existence of alternative designs is not dispositive of functionality in the claim construction context. Docket No. 141 at 5-6. It contends that the two cases on which plaintiff relies for the contrary proposition – *L.A. Gear* and *Avia Group International, Inc.* – are inapposite because both cases addressed functionality as part of an invalidity analysis. However, the Federal Circuit has said that the same factors "for determining whether a design claim was dictated by function" in an invalidity analysis "may serve as a useful guide for claim construction

functionality as well." *Sport Dimension, Inc.*, 820 F.3d at 1322.  Thus, to the extent

courts have afforded significant weight to the existence of alternative designs in the

invalidity analysis, *see, e.g.*, *Ethicon Endo-Surgery Inc.*, 796 F.3d at 1329-30 (noting

that the court has "often focused . . . on the availability of alternative designs as an

important – if not dispositive – factor in evaluating the legal functionality of a claimed

design"), the Court perceives no reason why the same would not hold true in the

context of claim construction.  *See, e.g.*, *Junker v. Med. Components, Inc.*, 2017 WL

4922291, at *6 (E.D. Penn. Oct. 31, 2017) (citing Federal Circuit cases indicating that

the existence of alternative designs is a significant factor in the functionality analysis to

support holding that particular design feature was not purely functional for purposes of

claim construction).  Walmart also asserts that the existence of "alternative functional

mechanisms . . . does not mean that the depicted features are not functional."  Docket

No. 141 at 5-6.  While this may be true, the relevant issue is not whether the poker,

tamper, and lighter opening are "functional" – i.e., whether they serve a functional

purpose – but whether the design of those features is dictated by function.  *See Avia*

*Grp. Int'l, Inc.*, 853 F.2d at 1563.  The existence of alternative designs is pertinent to

the latter inquiry.

Finally, Walmart argues that any "inference of ornamentality . . . is destroyed by

the fact that Lifted's utility patent claims the same features that Lifted now asserts are

ornamental."  Docket No. 141 at 6.  Walmart appears to assert that, because the '912

Patent claims the shape and placement of certain features of the '655 Patent, those

design choices are functional as a matter of law.  *See id.* at 7 (noting that "the shape

and placement of the tamper in relation to other elements of the tool are express

limitations that Lifted used to define the allegedly novel features of the claimed subject matter in the '912 patent"). The Court disagrees. The existence of a concomitant utility patent is only one factor to be considered in determining whether a claimed design is primarily functional. *See Sport Dimension, Inc.*, 820 F.3d at 1322. And, as already discussed, the '912 Patent does not dictate every design choice reflected in the '655 Patent.

Having determined that the poker, tamper, sloped top, and lighter sheath are not purely functional, the Court turns to the parties' proposed claim constructions. The Federal Circuit has articulated three principles to guide design patent claim construction: first, a design is typically "better represented by an illustration than it could be by any description," *Egyptian Goddess, Inc.*, 543 F.3d at 679 (internal quotation marks omitted); second, design patents "protect the overall ornamentation of a design, not an aggregation of separable elements," *Sport Dimension, Inc.*, 820 F.3d at 1322; and third, a court's claim construction must account for the manner in which functional elements contribute to the overall ornamentation of the design. *Id.*

Applying these principles, the Court finds that defendants' proposed instruction would place undue emphasis on certain aspects of the design claimed in the '655 Patent while excluding other elements in their entirety. Such an approach is inconsistent with the Federal Circuit's most recent guidance on claim construction in the design patent context. *See Sport Dimension, Inc.*, 820 F.3d at 1321 (reversing district court's claim construction, which "eliminate[d] whole aspects of the claimed design"); *Egyptian Goddess, Inc.*, 543 F.3d at 680 (cautioning courts against the risks of issuing a detailed verbal claim construction, including "the risk of placing undue

emphasis on particular features of the design and the risk that a finder of fact will focus

on each individual described feature in the verbal description rather than on the design

as a whole").  Moreover, defendants' verbal description – of "sides of a smooth surface

. . . and a smooth, continuously curved bottom with a single radius," Docket No. 85 at

16 – is both unsupported and confusing.  Defendants cite no authority for the

proposition that the absence of surface detail in the patent drawings means that the

'655 Patent "must be narrowly construed to include only smooth exterior sides."  Docket

No. 85 at 15.  Nothing in the federal regulations or the Manual of Patent Examining

Procedure ("MPEP") establishes that a blank white space in a design patent drawing

limits the claimed design to a smooth surface finish.  *See* 37 C.F.R. §§ 1.84, 1.152;

Manual of Patent Examining Procedure, § 1503.02 (9th ed.) (last revised Jan. 2018).

As one court has reasoned in a similar context, the MPEP's

> mandatory language [requiring the use of oblique line shading to show a
> transparent surface] does not necessarily mean that lack of oblique line
> shading disclaims a transparent, translucent, or reflective surface, nor
> does the lack of oblique line shading mean that the patentee only claimed
> an opaque surface.  In general, when a patent fails to specify a limitation,
> the patentee is entitled to the broadest reasonable construction.

*Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 3071477, at *5 (N.D. Cal. July

27, 2012) (citing *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1363 (Fed. Cir.

2004)).  Here, the '655 Patent neither claims nor disclaims a smooth surface.

Accordingly, it would be improper to import such a limitation into the scope of the

claimed design.  *See Unique Functional Prods., Inc.*, 82 F. App'x at 689 (holding that

district court erred by construing a design patent to include certain unclaimed features,

such as size and color, that were present in the design's commercial embodiment);

15

*Calphalon Corp. v. Meyer Corp.*, 2006 WL 2474286, at *2 n.1 (E.D. Cal. Aug. 25, 2006) (finding that the design patent did "not specify a particular material that must be used in an infringing handle").

The remaining aspects of defendants' proposed verbal description exemplify the principle that "a design is better represented by an illustration than it could be by any description." *Egyptian Goddess*, 543 F.3d at 679. The Court therefore declines defendants' detailed verbal construction and construes the '655 Patent as follows:

> An ornamental design for a lighter holder and tool as shown in Figures 1-7. Any purely functional features, such as the size and shape of the central lighter recess, should not be considered in determining infringement, except to the extent that those features contribute to the overall appearance of the claimed design.

This construction appropriately distinguishes between ornamental and functional aspects while ensuring that the jury focuses on the overall appearance of the claimed design. *See Apple Inc. v. Samsung Electronics Co., Ltd.*, 786 F.3d 983, 999 (Fed. Cir. 2015) (holding that district court's construction claiming "the ornamental design" as shown in the patent figures "properly reflected" the principle that "it is the non-functional, design aspects that are pertinent to determinations of infringement" (internal quotation marks omitted)); *see also HFA, Inc. v. Trinidad/Benham Corp.*, 2018 WL 1210880, at *4 (E.D. Tex. Mar. 7, 2018) (construing patent as "the ornamental design for a nested pans, as shown and described in Figures 1 to 14, excluding the elements shown in broken lines"); *Junker v. Med. Components, Inc.*, 2017 WL 4922291, at *7 (E.D. Penn. Oct. 31, 2017) (adopting construction claiming "the ornamental design of a handle for an introducer sheath, as shown in Figures 1-9," and collecting cases in which courts rendered similar constructions).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the parties' Joint Motion for Determination [Docket No. 153] is

**GRANTED**.  It is further

**ORDERED** that the '655 Patent is construed as follows:  An ornamental design

for a lighter holder and tool as shown in Figures 1-7.  Any purely functional features,

such as the size and shape of the central lighter recess, should not be considered in

determining infringement, except to the extent that those features contribute to the

overall appearance of the claimed design.


DATED May 27, 2020.


BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge